**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


JOHNSON CONTROLS, INC. and
BRIDGEWATER INTERIORS, L.L.C.,

       Plaintiffs,                      Case No. 08-12045

v.                                 Hon. Gerald E. Rosen

J.F. DUNN ENTERPRISES, INC.,
ALEX PRODUCTS, INC., and
A-STAMP INDUSTRIES, LLC,

       Defendants.
_____/


**OPINION AND ORDER DENYING**
**PLAINTIFFS' MOTION FOR REMAND**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     February 19, 2009

      PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiffs Johnson Controls, Inc. and Bridgewater Interiors, L.L.C. commenced

this breach-of-contract suit in state court on May 1, 2008, seeking to compel Defendant

J.F. Dunn Enterprises, Inc. ("J.F. Dunn") to continue to deliver automobile components

in accordance with the terms of the parties' contracts.  That same day, Plaintiffs secured

an *ex parte* temporary restraining order directing this Defendant to continue to supply

these components until further order of the state court, and ordering the parties to appear

for a May 14, 2008 hearing on the matter. Plaintiffs then filed a first amended complaint on May 7, 2008, naming Alex Products, Inc. ("API") and A-Stamp Industries, LLC ("A-Stamp") as additional Defendants, and asserting additional state-law claims of alter ego liability and tortious interference with contractual relations.

On May 9, 2008, Defendants API and A-Stamp — both Ohio entities — removed the case to this Court, citing diversity of citizenship as the basis for removal. Although the third Defendant, J.F. Dunn, shares Michigan citizenship with at least one Plaintiff, API and A-Stamp contend that this non-diverse Defendant was fraudulently joined as a party, and that its citizenship may be disregarded in determining the existence of diversity jurisdiction.[1]

By motion filed on May 12, 2008, Plaintiffs seek remand of this case to state court, arguing that their complaint states one or more viable claims against J.F. Dunn, thereby destroying the complete diversity of citizenship that is necessary to support Defendants' removal of this action.[2] Having reviewed the parties' briefs in support of

---

[1]The Court notes that Plaintiff Bridgewater Interiors and Defendant A-Stamp are limited liability companies. Because the parties' initial submissions did not identify the constituent members of these LLCs or their citizenship, the Court issued a show cause order directing Defendants to address this matter. In response, Defendants have stated (i) that the three individual members of the Plaintiff limited liability company, Bridgewater Interiors, reside in Michigan and California, (ii) that the corporate member of this Plaintiff entity, co-Plaintiff Johnson Controls, is a Wisconsin resident, and (iii) that the sole member of Defendant A-Stamp is an individual who resides in Ohio. Thus, this aspect of the diversity inquiry has been resolved.

[2]Plaintiffs also challenged removal on the ground that one of the Defendants, J.F. Dunn, had not yet consented to removal. As Defendants point out, however, the 30-day period for giving this consent had not yet expired as of the date Plaintiffs filed their motion. In any event, if Defendants are able to establish that J.F. Dunn was fraudulently joined as a party, then they

2

and opposition to Plaintiffs' motion, the accompanying exhibits, and the record as a

whole, the Court finds that the relevant facts, allegations, and legal arguments are

adequately presented in these written submissions, and that oral argument would not aid

the decisional process.  Accordingly, the Court will decide Plaintiffs' motion "on the

briefs."  See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  For

the reasons stated below, the Court finds that this motion must be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Johnson Controls and Bridgewater Interiors are "Tier 1" suppliers to the

automotive industry, manufacturing seat assemblies and other automobile components

for all of the major automakers.  Defendants are "Tier 2" suppliers, providing

components to Plaintiffs that in turn are used to manufacture the seat assemblies and

other parts sold by Plaintiffs to the automobile manufacturers.  According to the

complaint, Defendants' sales of components to Plaintiffs are governed by various terms

and conditions, including price terms, that are incorporated by reference into the purchase

orders issued by Plaintiffs for each sale.

In their complaint, Plaintiffs allege that Defendants committed an anticipatory

breach of their contractual obligations to Plaintiffs by advising them on March 5, 2008

that they would cease to provide components as of April 1, 2008 unless Plaintiffs agreed

to pay higher prices to offset dramatic cost increases for the steel used to manufacture

---

need not obtain its consent to removal.  See Alexander v. UDV North America, Inc., 78 F.
Supp.2d 614, 617 n.4 (E.D. Mich. 1999).

these components.  When Plaintiffs ultimately refused to meet this price demand,

Defendants notified them in an April 28, 2008 e-mail that component shipments would

cease on May 1, 2008.  Plaintiffs responded by commencing this suit in state court on

May 1, 2008, seeking an order compelling Defendants to continue their shipments of

components in accordance with the parties' agreements and enjoining them from taking

any action inconsistent with their alleged obligation to provide these components at the

agreed-upon prices.  As noted, the state court issued an *ex parte* temporary restraining

order on the date the suit was filed, directing Defendants to continue supplying

components to Plaintiffs until further order of the court, and instructing the parties to

appear at a May 14, 2008 hearing at which the court would consider whether to extend its

award of temporary injunctive relief.

Plaintiffs' initial complaint named J.F. Dunn Enterprises, Inc. ("J.F. Dunn") as the

sole Defendant.  Plaintiffs alleged in this initial complaint that J.F. Dunn was a Michigan

corporation, and that it was doing business as API Sales Company ("API Sales") and

Alex Products, Inc. ("API").  In a first amended complaint filed on May 7, 2008,

however, Plaintiffs named API and A-Stamp Industries, LLC ("A-Stamp") as additional

Defendants, identifying these two entities as Ohio companies with their principal places

of business also in Ohio.  This first amended complaint also augmented the initial

complaint's breach-of-contract claims with two additional theories of recovery:  (i) a

claim of alter-ego liability, supported by allegations that J.F. Dunn, API, and A-Stamp do

4

not act independently, but instead hold themselves out as one and the same company; and

(ii) a claim that Defendant J.F. Dunn tortiously interfered with the contractual

relationship between Plaintiffs and the two other Defendants.

On May 9, 2008, the two additional Defendants named in the first amended

complaint — API and A-Stamp — removed the case to this Court, citing diversity of

citizenship as the ground for removal.  Although the third Defendant, J.F. Dunn, shares

Michigan citizenship with one or more of the members of the Plaintiff limited liability

company, Bridgewater Interiors, API and A-Stamp assert that J.F. Dunn may be

disregarded for purposes of removal because Plaintiffs purportedly have failed to state a

viable claim against this Defendant.  Plaintiffs disagree, and have challenged Defendants'

appeal to fraudulent joinder through their present motion for remand.[3]

### III.  ANALYSIS

**A.     The Standards Governing Plaintiffs' Motion**

As the removing parties, Defendants bear the burden of establishing a basis for this

Court's subject matter jurisdiction.  See Gafford v. General Electric Co., 997 F.2d 150,

155 (6th Cir. 1993); Young v. Bailey Corp., 913 F. Supp. 547, 550 (E.D. Mich. 1996).

More specifically, because Defendants appeal to the "fraudulent joinder" of co-Defendant

---

[3]Apart from Plaintiffs' motion for remand, Defendants filed a motion seeking to set aside the temporary restraining order ("TRO") issued by the state court.  This TRO has since expired by operation of law, but the parties subsequently agreed, at least for a time, to continue complying with it while they explored a possible settlement.  Because all such extensions apparently have expired and the TRO is no longer in effect, Defendants' motion will be denied as moot.

J.F. Dunn as the purported basis for this Court's diversity jurisdiction, Defendants must

show "the absence of a 'reasonable basis for predicting that the state law might impose

liability [on J.F. Dunn] on the facts involved.'"  Young, 913 F. Supp. at 550 (quoting

Alexander v. Electronic Data Systems Corp., 13 F.3d 940, 949 (6th Cir. 1994)).

The issue of fraudulent joinder ordinarily is to be decided solely upon Plaintiffs'

pleadings.  See Young, 913 F. Supp. at 550.  The Court has the limited authority,

however, to accept and consider affidavits and other evidentiary materials bearing upon

this threshold jurisdictional inquiry.  See, e.g., Crowe v. Coleman, 113 F.3d 1536, 1538

(11th Cir. 1997); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 & n.9 (5th Cir. 1981);

see also Young, 913 F. Supp. at 550-51 (considering affidavits submitted by the parties in

resolving a claim of fraudulent joinder).  Nonetheless, the Court must take care that this

threshold inquiry does not "subsume substantive determination," and that all disputed

issues of fact are resolved in Plaintiffs' favor.  B., Inc., 663 F.2d at 549-50; see also

Young, 913 F. Supp. at 551 (declining to resolve the factual dispute raised by the parties'

competing affidavits "in light of the pre-discovery phase of this litigation").

**B.     Plaintiffs Have Failed to Identify a Viable Basis for an Alter Ego Recovery
         Against J.F. Dunn.**

As noted above, Plaintiffs' initial complaint named J.F. Dunn as the sole

Defendant, and alleged that this party conducted business as API Sales, API, and A-

Stamp.  Plaintiffs then amended their complaint to name API and A-Stamp as additional

Defendants, in evident recognition that these two parties (i) each has a corporate

6

existence separate from J.F. Dunn, and (ii) are identified in the relevant purchase orders as the parties to the contractual relationships giving rise to Plaintiffs' claims in this case. Nonetheless, Plaintiffs have alleged in their first amended complaint that J.F. Dunn remains liable for its co-Defendants' breaches of their agreements with Plaintiffs, on the ground that all three of these Defendant entities are mere alter egos of one another and have "abused the formal separateness between themselves." (First Amended Complaint at ¶ 55.) Even accepting these alter-ego allegations, however, the Court finds no basis in Plaintiffs' pleadings or the record for imposing liability upon J.F. Dunn for any breaches of contractual obligations owed by Defendants API or A-Stamp.

"Under Michigan law, there is a presumption that the corporate form will be respected." Servo Kinetics, Inc. v. Tokyo Precision Instruments Co., 475 F.3d 783, 798 (6th Cir. 2007).[4] Nonetheless, a court may "pierce the corporate veil" and hold a third party liable for the corporation's actions if "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." Servo Kinetics, 475 F.3d at 798. "The propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven." 475 F.3d at 798.

_____

[4]Although it is not clear from the pleadings and attached exhibits which state's law governs the parties' contractual relationships, the parties' briefs cite almost exclusively to Michigan law, and neither side argues that another state's law should govern the Court's alter-ego inquiry.

As to the first prong of this inquiry, Plaintiffs cite the following examples of Defendants' alleged "abuse[s] of [the] formal separation between and among them":  (i) the shared use of the same letterhead, (ii) the response by one Defendant to correspondence or inquiries directed to another, (iii) the shared use by API and J.F. Dunn of the same Michigan address in correspondence and transactions with Plaintiffs, (iv) the shared use of corporate facilities, and (v) the intermingling of corporate financing.  In support of these allegations, Plaintiffs point to (i) purchase orders listing API as the supplier but giving its address as the Chelsea, Michigan location of J.F. Dunn; (ii) correspondence sent to Plaintiffs on the letterhead of API but authored by John Dunn of J.F. Dunn and listing a return address of API Sales, a name under which J.F. Dunn does business, (see Plaintiffs' Motion, Ex. 3); and (iii) an April 28, 2008 e-mail message from John Dunn of API Sales, in which he references the financing provided by "our bank" and the steps "we" will take if Plaintiffs do not meet Defendants' increased price demand, (see Plaintiffs' Motion, Ex. 4).  In response, Defendants have submitted the affidavit of David Von Deylen, the president and sole shareholder of API, stating (i) that each Defendant is a separate entity, (ii) that J.F. Dunn is an independent sales representative for API that is "compensated on a straight commission basis for developing and maintaining relationships with large customers such as Plaintiffs," (iii) that only API and A-Stamp, and not J.F. Dunn, are parties to the agreements with Plaintiffs calling for the purchase and sale of automotive components, and (iv) that J.F.

8

Dunn does not do business as API or A-Stamp, nor does it have any manufacturing facilities or capabilities.

The Court need not resolve any factual disputes as to the first prong of the alter-ego inquiry, because Plaintiffs' allegations, if proven, would not establish the remaining two prongs of this standard. Even if Defendants were less than careful in respecting the separate corporate existence of API, A-Stamp, and J.F. Dunn, and even if some of their interactions with Plaintiffs reflected their complete unity of interests, there is no basis in the complaint for concluding that Defendants "used" their alleged abuses of the formal separation among them to perpetrate the wrong alleged by Plaintiffs here — *i.e.,* the anticipatory breach of the parties' agreement. While the breach of a contract qualifies as a "wrong" under the second prong of the veil-piercing standard, see Servo Kinetics, 475 F.3d at 799-800, there nonetheless must be a basis for concluding that Defendants ***used*** the device of an ostensibly separate corporation to commit this wrong. The allegations here, however, merely suggest that Defendants blurred any distinctions among themselves in communicating with Plaintiffs about their increased price demands. There simply is no causal connection between this alleged intermingling of corporate identities and the wrong complained of by Plaintiffs, such that one could conclude that the former was "used" to bring about the latter.[5]

---

[5]To be sure, Plaintiffs explicitly allege in their complaint that "API and API Sales abused the formal separateness between themselves . . . to commit wrongs against Plaintiffs." (First Amended Complaint at ¶ 55.) To the extent that this reflects a legal conclusion, however, the Court need not accept it as true if the law dictates otherwise.

9

Likewise, the complaint lacks any allegations of an "unjust" loss — *i.e.,* a loss that is appropriately remedied by piercing a corporate veil.  Again, even accepting that J.F. Dunn was communicating with Plaintiffs as though it was one and the same company as the actual parts suppliers, API and A-Stamp, this intermingling of corporate identities did nothing to make Plaintiffs' alleged losses in this case more or less "unjust."  Regardless of whether J.F. Dunn misleadingly referenced a collective decision by the Defendants as a unified whole in its communications with Plaintiffs, and regardless of whether this course of conduct might have led Plaintiffs to be understandably uncertain about where one Defendant's corporate existence left off and another's began, Plaintiffs' alleged losses here would be precisely the same — namely, the stated refusal of a contracting party to continue performing its contractual obligations.  And, of course, the appropriate remedy remains the same — either ordering the contracting party to perform these obligations (as Plaintiffs request) or awarding damages.

More generally, there simply is no reason in this case to pierce the corporate veil of one Defendant to reach another.  The purchase orders attached as exhibits to Plaintiffs' complaint identify API and A-Stamp as the contracting parties.  Because of this, Plaintiffs have appropriately named these two entities as Defendants that are subject to breach-of-contract liability.  Plaintiffs have failed to suggest any impediment to the imposition of liability against these parties or their ability to enforce a judgment against these parties.  This is not a case where, for example, a shell corporation holds itself out as

10

the contracting party, while a third party actually controls this corporation and its performance under the contract.  Rather, the undisputed record shows that API and A-Stamp truly are the entities with the facilities and means to manufacture the parts sought by Plaintiffs, and that J.F. Dunn has no such manufacturing capability.  It follows that a suit against API and A-Stamp is a wholly sufficient vehicle for Plaintiffs to obtain relief from the harms allegedly inflicted by these two parties, without the need to pierce the corporate veil of either of these parties and reach another entity.

Indeed, Plaintiffs' examples of blurred corporate existence run entirely in the wrong direction, and provide no basis for a veil-piercing that would reach J.F. Dunn, the non-diverse Defendant.  The correspondence and other materials cited by Plaintiffs do not evidence any attempt by J.F. Dunn to hide behind API or A-Stamp, such that it would be appropriate to pierce the corporate veil of one of these latter entities in order to impose liability on J.F. Dunn as the true party in interest.  Rather, these materials, at best, reveal that J.F. Dunn is speaking on behalf of API and A-Stamp, with the latter two entities "hiding behind" the former.  While this might suggest a ground for piercing the corporate veil of J.F. Dunn in order to reach API and A-Stamp as the entities that are truly responsible for the harm suffered by Plaintiffs, this is not what Plaintiffs seek to do here. To the contrary, they do not claim or identify any impediment to their ability to seek relief directly against API and A-Stamp.  Under these circumstances, it seems evident that Plaintiffs' appeal to an alter-ego theory of recovery is motivated solely by their

11

desire to keep a non-diverse Defendant, J.F. Dunn, in this case.  This, needless to say, does not establish Defendants' abuse of their separate corporate existence "to subvert justice," such that the equitable relief of veil-piercing is warranted.  Wells v. Firestone Tire & Rubber Co., 421 Mich. 641, 364 N.W.2d 670, 674 (1985).

**C.      Plaintiffs Have Failed to Identify a Distinct Interest That Could Have Motivated J.F. Dunn to Tortiously Interfere With the Contractual Relations Between Plaintiffs and API and A-Stamp.**

Plaintiffs' remaining theory of liability against J.F. Dunn is pled in the alternative. Specifically, in the event that it is determined that J.F. Dunn is not a mere alter ego of its two co-Defendants, and hence jointly liable for a breach of contract committed by either API or A-Stamp, Plaintiffs assert that J.F. Dunn is subject to liability for tortiously interfering with the contractual relationships between Plaintiffs and the other two Defendants.  Yet, even accepting, for present purposes, that the three Defendant entities have properly maintained separate corporate existences and are not mere alter egos of one another, the allegations of the complaint fail to identify a sufficiently distinct interest held by J.F. Dunn vis-a-vis the other two Defendants, such that Plaintiff has stated a viable claim of tortious interference against J.F. Dunn.

Under Michigan law, in order to be held liable for tortious interference, the defendant must be a "third party" to the contractual relationship with which it has allegedly interfered.  Willis v. New World Van Lines, Inc., 123 F. Supp.2d 380, 396 (E.D. Mich. 2000).  Thus, a "corporate agent is not liable for tortious interference with

12

the corporation's contract unless the agent acted purely for personal gain and with no benefit to the corporation."  <u>Willis</u>, 123 F. Supp.2d at 397 (internal quotation marks and citations omitted).  It follows, in Defendants' view, that J.F. Dunn cannot be held liable for tortious interference with the contractual relationships between Plaintiffs and co-Defendants API and A-Stamp, because J.F. Dunn served as the agent of its two co-Defendants in negotiating and maintaining the contractual relationships between these two entities and Plaintiffs.

In an effort to avoid this result, Plaintiffs seize upon an apparent inconsistency in the arguments advanced in Defendants' submissions.  In particular, while Defendants API and A-Stamp appeal to J.F. Dunn's status as their "agent" in an effort to defeat Plaintiffs' claim of tortious interference, they seek to place a greater distance between themselves and J.F. Dunn in challenging the viability of Plaintiffs' claim of alter-ego liability, contending in the latter instance that J.F. Dunn is an "independent contractor" with a separate corporate existence.  Plaintiffs then appeal to case law treating agents and independent contractors as distinct under the law.

This case law distinguishing between agents and independent contractors is inapposite here.  The reason why "agents" are not liable for tortious interference is that an agent's interests typically are fully aligned with those of its principal, such that there is no basis for concluding that the agent might have acted contrary to the interests or purposes of the principal in interfering with the latter's contractual relations.  <u>See</u> <u>Willis</u>,

13

123 F. Supp.2d at 397 (observing that an agent *may* be liable for tortious interference if he acted "for personal gain and with no benefit to the corporation").  This alignment of interests holds true regardless of whether the "agent" qualifies as an "independent contractor" in circumstances where this distinction is legally significant.

Here, even accepting Defendants' assertion that J.F. Dunn qualifies as an "independent contractor," there is no suggestion in the complaint or elsewhere in the record that it might have acted as anything other than an "agent" with regard to the contractual relationship between Plaintiffs and the two co-Defendants.  In particular, Plaintiffs have not identified any interest unique to J.F. Dunn alone in this contractual relationship, such that J.F. Dunn could be found to have placed this individual interest above the interests of API or A-Stamp in allegedly acting to interfere with the contractual relationships between these co-Defendants and Plaintiffs.  To the contrary, the sole evidence in the record bearing upon this point reflects that J.F. Dunn is paid commissions for developing and maintaining relationships between API and A-Stamp and customers such as Plaintiffs.  Under these circumstances, interference with such relationships would harm J.F. Dunn and the two co-Defendants alike.  Thus, Plaintiffs cannot demonstrate that J.F. Dunn "acted purely for personal gain and with no benefit to" API or A-Stamp in allegedly interfering with the contractual relations of these two co-Defendants, such that Plaintiffs could sustain a claim of tortious interference against J.F. Dunn.  It follows that Defendants have established the fraudulent joinder of J.F. Dunn.

14

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' May 12, 2008 motion for remand (docket #3) is DENIED.  IT IS FURTHER ORDERED that Defendants' May 13, 2008 motion to dissolve temporary restraining order (docket #4) is DENIED AS MOOT.  Finally, IT IS FURTHER ORDERED that the Court's May 16, 2008 show cause order is VACATED, in light of Defendants' May 20, 2008 response addressing the Court's concerns regarding the citizenship of the Plaintiff and Defendant limited liability companies.


s/Gerald E. Rosen
Chief  Judge, United States District Court

Dated:  February 19, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 19, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager